Good morning I'm Philip Brooks appearing on behalf of Mr. Pierce. I'd like to ask whether the court has any questions after having reviewed all the briefing in the case. If not I'd like to just say then that this is in all the years I've been practicing and doing appeals I have not seen a case where testimony was allowed at trial about what jurors believed or didn't believe in a previous trial. Now we had evidence that in the North Carolina trial there were verdicts of conviction, there were verdicts of acquittal. Those are court records, those are official records, they're you know solemnly arrived at, they're admissible in evidence. But what was not admissible in evidence here was testimony from Susan L about what the jurors told her about what they were really thinking during their deliberations. This is, I mean I haven't seen this before and I don't think that there's any law that allows that kind of testimony. That's why we object to it at trial. What's odd about this one counsel, and I agree with you, I don't think I've ever seen a case where somebody was allowed to testify about what jurors told them after a case in another case. But I'm not sure I've ever, I'm not sure that I recall somebody being cross, a witness being cross examined about the result of a case in another, in another jurisdiction. She was asked specifically by, I don't know whether you were trial counsel here. No I wasn't. Okay, but my trial counsel about the fact that her father was acquitted in the sexual molestation charges in North Carolina. That seems to invoke sort of the relevance of the North Carolina proceeding. And then he accused her of sort of her testimony in order to compensate for the fact that her father had been acquitted of some charges in North Carolina. And all she That seems to open the door for quite a bit at that point. Well all she would have had to say is I haven't added anything. All I'm saying here is the truth. And you know to give her own mental process is certainly fair game. If counsel is asking her about her mental process, you know were you worried about this? Do you think you had to embellish? Completely fair game. But for him to go, for her to then go on and say, well, and the jurors told me this and they hugged me and kissed me and, I mean, I, I mean, I rest on what was said in the briefs. I just think that was unbalanced. The response you get isn't the response you expect. But what does a court on appeal do when we see that the, the A response was, was required? I, I know what somebody hoped the response was going to be, and it wasn't. But there's, some response was required, wasn't it? Well, the response By the inquiry. The, the inquiry that was put to the witness about what the jurors said was objected to before it was answered. So the court, the trial court should have kept the inquiry within the proper bounds before this all came up. Once we have it in the record, now, you know, we have to deal with it on appeal. That's true. And I think the answer is But we're not just dealing with it on appeal. We have to deal with it under, under AEDPA. We've, this has already been appealed to the California Court of Appeal and they didn't, they didn't, they rejected the argument. That's right. We have about five layers to go through here. And I think that the flaw in the California Court of Appeals analysis is, first of all, I, I don't, I believe the court mischaracterized the curative instruction that the trial court gave the jurors. And what the Court of Appeal said about the curative instruction was a much more complete and a comprehensive explanation of what, you know, the jurors should have been told and what they were actually told. And I think that, I mean, I can still remember my first evidence course in law school, and we're talking about hearsay and the truth of the matter asserted, and that's the words that were used to the jurors in this case. And I don't think those words are immediately self-evident as to their meaning. How does that get you to a constitutional violation, though? Well, it's, it's a confrontation violation. The jurors' thoughts about why they reached their verdict are coming into evidence, and we don't have an opportunity to cross-examine on that. And it's one thing for the Court of Appeal to say, well, they told the jurors not to consider that for the truth of the matter asserted, but that's the, that's where I'm back to now, that I think that's a very difficult concept for a juror to grasp, and particularly when it's given in a very quick instruction, sort of in these legal terms without any explanation. And the principal case is Crawford? Right. Okay. And if the California Court of Appeal had read Crawford, they would have known that they were making a mistake? That's the basic, that's the basic premise of EDPA, is we're only here to correct just obvious error, constitutional errors. That's true. And it has to be in, in a Supreme Court case that, had it been cited to the lower court, had the court taken appropriate notice of it, would have immediately recognized its error. The California Court of Appeal, if it had read Crawford, would have known it was making a mistake in this case? Well, I mean, I have, as I said to the Court earlier, I have not seen a case that had this particular fact situation raised. And so maybe the Court would have looked and said, well, you know, Crawford didn't deal with juror testimony, and so we don't think it's applicable. But it seems to me that when we don't have a case that's on all fours on the facts, then the Court of Appeal is, is bound to sort of look at it and try to analyze it and say, well, why would this come within Crawford? Why wouldn't it come within Crawford? And if they should have concluded it would come within it. But when a court, when a court has to take, take notice of a case that isn't on all fours and, and analyze it, that is precisely the job of those courts and not the kind of thing that we get to correct under AEDPA. Well, it seems to me, Your Honor, that this is a violation under Crawford, regardless of the layer of analysis that we have to do through AEDPA, because this is just a, I mean, this, this is, this is the, the, the trial court warned the jurors. Yes. That the matter was not being admitted for the truthfulness of, of that. This is, this had, this went to her motivation as to why she was testifying in this way. Well, I think Your Honor's question actually shows part of the difficulty with the language that was used, because the court didn't say it's, it's not to be considered for the truthfulness of what was asserted, but rather for the truth of what was asserted. And the difference is truth, truthfulness is the opposite of lying. And that's not the point. The point is, is it coming in to, to, for the jurors to set, for the jurors in the new trial to say, this, in fact, is what the North Carolina jurors believed? That's for the truth of the matter. Why does this, why does this violate Crawford? Crawford applies to testimonial evidence. How do you get to that? I believe that this evidence arises to that level of testimonial evidence, because it's not just laypersons talking about what they, you know, talked about at the drug store or something among, you know, her, Susan's friends from, these are jurors. These are people that are invested with the power in that particular trial to reach a judgment on the case, and so I think they are telling the jurors in this case what was arrived at in their official capacity as court officials and as, as judges. And I think that, therefore, rises to the level of testimonial evidence within Crawford. Sometimes it's dangerous to ask questions when you don't know what the response is going to be. That's right. Especially when it hurts you, but what does it, what do we do? What would be the rationale, our rationale, if we agreed with your position and decided this case for your client? I think the rationale that this Court should adopt would be to say, this juror, this testimony about what the jurors in North Carolina told Susan L. was objected to, and the trial court should have nipped it in the bud right there, and that when it came in, they were entering a completely forbidden area that was testimonial under Crawford, and it was a confrontation violation. With that, I'll save any remaining time for rebuttal. You have a minute and a half. Thank you. Mr. Marshall. Good morning. Todd Marshall for Appellee Adams. May it please the Court. This Court cannot grant relief unless there is no possibility that fair-minded jurors could disagree about whether the State court ruling was contrary to or an unreasonable application of clearly established United States Supreme Court precedent. There are two ways to look at this case that are basically arrive at the same conclusion. Either there is no clearly established Supreme Court precedent that dictates that this scenario, which was unusual, was a violation of the Constitution, or if you look at the established precedent, this case is factually different. It's the same thing. There simply is not a constitutional violation here. This was a State evidentiary question, and it's really not part of what this Court is about. With regard to the Confrontation Clause, Crawford makes it clear that two things have to happen before the Confrontation Clause is applicable. It has to be, for the truth of the matter asserted, that's in footnote 9, and it has to be testimonial, and as this Court said in Jensen, given probably to a governmental agent with an eye towards trial. That certainly was not the case here. The jurors themselves in North Carolina were no longer jurors. The case had concluded. Their service had ended. They had returned to their status as ordinary citizens. They took it upon themselves to try to appease the victim. Nothing more. With regard to the vouching, same situation. There is no United States Supreme Court authority that says this type of a case is a vouching case. No witness came forward. No prosecutor said anything about insinuations of unknown information. It's simply not a vouching matter. With regard to the question of whether or not Mr. Pierce's ineffective assistance claims should relate back, they do not. Some circuit authority has allowed a new theory of why evidence shouldn't be allowed or perhaps allowed an ineffectiveness claim to be added to an existing theory. But that's not what we have here. We have three new theories. We have a new evidence code section that was not raised. We have an ineffective assistance of trial counsel that was not raised and an ineffective assistance of appellate counsel. So we have three new theories. The ineffective assistance of trial counsel arose out of the exact same facts as the complaint about allowing this hearsay testimony of what the jurors said. I mean, how can that not relate back? I would beg to differ. When you look at the facts that started, those are similar. The admission of evidence facts are similar. But the new facts that are required for disposition of an ineffectiveness claim revolve around tactical considerations, what was known by other lawyers, the applicability of evidence code section 31150. Those are new facts that are outside of what the trial court was raising. And they're not going to arise in any ineffective assistance case, are they? I mean, any – all ineffective assistance claims are going to require some additional adumbration. And that's why I contend that any case that allows for a relation back of an ineffectiveness claim over an admission claim is an incorrect jurable – So you're saying it can never happen. There can never be an ineffective assistance claim based on not objecting to evidence that shouldn't have been admitted that relates back. Is that your position? That is my position, Your Honor, yes. And even worse here, a new theory and two evidence – or ineffective assistance layers added on. When you're analyzing ineffectiveness, you're talking about a completely different actor. In the admission of evidence context, you're talking about what the court did, what the court knew, what the court thought. And when you're talking about ineffective assistance, you're talking about, well, what did counsel do or know or think? What was his tactical considerations? It's completely different questions, completely unrelated. And worse here, upon an evidence code section that had never been mentioned before. And even if this Court is not impressed with the relation back argument, there's no underlying merit to the claim because the evidence code section 1150 by its very terms is inapplicable, because there was no inquiry into the validity of any verdict at the time, and it wasn't offered for its effect upon the jurors, but rather quite the contrary, the effect upon the victim. Since there was no constitutional violation here, the State court's rejection of his claims cannot be said to be contrary to or an unreasonable application of clearly established law. Unless the Court has any further questions. Thank you. Thank you, Mr. Marshall. Mr. Brooks, you've reserved some time. Yes, I think I've said everything I have to say with the issue we were discussing before, but with regard to the relation back doctrine, maybe the Court already knows this, but in the opening brief, starting at page 59, I've listed the cases that we located that say that an ineffective assistance of counsel claim can relate back, and I think I'll rely on those cases as cited in the brief. And unless the Court has anything else, I'm prepared to submit the matter, and I Thank you, Mr. Brooks. We thank both counsel for the argument.
judges: Adelman, Farris, Bybee